## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLY and ROGER WHITE, | **JURY TRIAL DEMANDED** |
| *Plaintiffs,* | |
| v. | **COMPLAINT** |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORP., and HONEYWELL INTERNATIONAL INC. f/k/a ALLIED-SIGNAL INC., | Case No.: 1:16-CV-0934 (LEK/DJS) |
| *Defendants.* | |

Plaintiffs, BEVERLY and ROGER WHITE, by and through undersigned counsel, hereby allege:

### INTRODUCTION

1.      The Village of Hoosick Falls in upstate New York, once known as the "Home of New York State's Best Tasting Water,"[1] is today sadly known for having water tainted by a deadly chemical known as perfluorooctanoic acid or PFOA.

2.      For decades, the operators of a plastics plant on McCaffrey Street, which used PFOA to manufacture products resistant to heat, stain, and water, carelessly discharged PFOA into the environment, contaminating the groundwater and water supply of Hoosick Falls. Saint-Gobain Performance Plastics Corp. ("Saint-Gobain") currently owns the plant, and AlliedSignal Inc., now known as Honeywell International Inc. ("Honeywell"), used to own it.

3.      The New York Department of Environmental Conservation has identified Saint-Gobain and Honeywell as parties responsible for contaminating the groundwater and water supply in Hoosick Falls with PFOA.[2]

---

[1] Associated Press :"Hoosick Falls Wins Contest for Best Water," Schenectady Gazette, September 1, 1987.

4.      Plaintiffs seek recovery from Defendants for injuries, damages and losses suffered by the Plaintiffs, each of whom suffered injuries as a result of exposure to the introduction of Perfluorooctanoic acid ("PFOA") and other toxic substances into the drinking water of Hoosick Falls, in an amount to exceed $75,000.00, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because Saint-Gobain Performance Plastics Corp. has its principal place of business in Pennsylvania and Honeywell International Inc. has its principal place of business in New Jersey, and the amount in controversy exceeds $75,000.00.

6.      Venue is proper in this Court because Defendants conducts substantial business in this District and Plaintiffs' claims arose in this judicial district, pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

## PLAINTIFFS

7.      Plaintiffs Beverly and Roger White are citizens and residents of Hoosick Falls, NY, residing at 14 Willow Street, Hoosick Falls, NY  12090. The Whites own their home which they purchased in 1985, obtain their water from the municipal well, and have suffered a decrease in the value of their home since the disclosure of PFOA contamination in the area.

8.      Plaintiff Beverly White has been exposed to high levels of PFOA, has elevated levels of PFOA in her blood, suffers from kidney problems, high cholesterol, and is at an increased risk of several health effects, including but not limited to effects on the liver and immune system, high cholesterol levels, changes in thyroid hormone, and kidney cancer.

9.      Plaintiff Roger White has been exposed to high levels of PFOA, has elevated levels of PFOA in his blood, and is at an increased risk of several health effects, including but not limited

---

[2] See Orders on Consent and Administrative Settlement, Index No. CO 4-21060212-18 and CO 4-20160415-79, New York State Department of Environmental Conservation State Superfund Program, ECL §27-1301 *et seq.*

to effects on the liver and the immune system, high cholesterol, changes in thyroid hormone, and kidney and testicular cancer.

## DEFENDANTS

10.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

11.     The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

12.     Upon information and belief, each of the Defendants are responsible, negligently, intentionally and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants or employees, or due to the ownership, maintenance or control of the instrumentality causing them injury, or in some other actionable manner.

13.     Defendant SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION ("Saint-Gobain") is a foreign company with its principal place of business located at 750 East Swedesford Road, Valley Forge, Pennsylvania, doing business in the State of New York.

14.     Defendant Saint-Gobain is a multinational corporation based in Paris with more than 350 years of engineered material expertise.  Defendant Saint-Gobain is one of the top 100 largest industrial companies in the world with € 43.2 billion in sales and 193,000 employees in 64

countries.  Defendant Saint-Gobain employs approximately 1,200 people in the State of New York.

15.     Defendant Saint-Gobain is the world's leading producer of engineered, high-performance polymer products, serving virtually every major industry across the globe.  Saint-Gobain businesses support these key industries in bringing advanced technology polymer products and using them in the most demanding applications.

16.     Defendant HONEYWELL INTERNATIONAL, INC. ("Honeywell"), f/k/a Allied-Signal, Inc., is a Delaware corporation with its principal executive office at 115 Tabor Road, Morris Plains, New Jersey, doing business in the State of New York.

17.     Defendant Honeywell is a Fortune 100 company with a global workforce of approximately 130,000. It serves a variety of industries, including the specialty chemicals industry.

18.     In 1999, Allied-Signal, Inc. acquired Honeywell.  The combined company adopted Honeywell's name, however, because of name recognition.

19.     Allied-Signal was an aerospace, automotive, and engineering company that was created through the 1985 merger of Allied Corp. and Signal Companies. Together, these companies had operated in the United States since at least the early 1920s.  Prior to the merger, a significant portion of Allied Corp.'s business was concerned with the chemical industry.

20.     Defendants, at various times herein, and described more fully below, operated the Facility at 14 McCaffrey Street in the Village of Hoosick Falls, New York.

### PFOA Background

21.     Perfluorooctanoic acid (PFOA, also known as C8 or perfluorooctanoate) is a man-made, manufactured chemical not found in nature that belongs to a group of fluorine-containing chemicals called perfluorinated chemicals (PFCs). These chemicals were and are used to make

household and commercial products that resist heat and chemical reactions, and repel oil, stains, grease, and water.

22.     In 1947, the Minnesota Mining and Manufacturing Company (3M) began producing PFOA via electrochemical fluorination.

23.     PFOA was once widely used in nonstick cookware, in surface coatings for stain-resistant carpets and fabric, and in paper and cardboard food packaging (such as microwave popcorn bags and fast food containers).  PFOA was also used in fire-fighting foam and in many products for the aerospace, automotive, building/construction, and electronics industries.

24.     Over the years, a number of companies, including but not limited to, Arkema, Asahi, BASF, Clariant, Daikin, DuPont, and Solvay Selexis have manufactured PFOA within the United States.

25.     PFOA is a fluorine-containing chemical that is primarily used in the production of fluoropolymers such as poly-tetra-fluoro-ethylene ("PTFE").  Upon information and belief, PFOA was a component of the PTFE that was used at the Facility located at 14 McCaffrey Street, Hoosick Falls, NY  12090.

26.     PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney and liver.

27.     In 2006, eight major PFOA manufacturers agreed to participate in the U.S. Environmental Protection Agency's ("EPA") PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95%, no later than 2010.

28.     As of May 2016, the EPA has issued Lifetime Health Advisories and Health Effects Support Documents for PFOA and PFOS.[3] The EPA identifies the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure at 70 parts per trillion. While health advisories are non-regulatory, they reflect the EPA's assessment of the best available peer-reviewed science.

29.     PFOA gets into the environment from industrial facilities that make PFOA or use PFOA to make other products. It also enters the environment when released from PFOA-containing consumer products during their use and disposal.

30.     PFOA can remain in the environment, particularly in water, for many years. PFOA can move through soil and into groundwater, or be carried in air.

31.     Human studies show associations between increased PFOA levels in blood and an increased risk of several health effects, including effects on the liver, the immune system, high cholesterol levels, increased risk of high blood pressure, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

32.     These injuries can arise months or years after exposure to PFOA.

33.     PFOA's extreme persistence in the environment and its toxicity, mobility and bioaccumulation potential, pose potential adverse effects to human health and the environment.

## PFOA in Hoosick Falls

34.     The facility located at 14 McCaffrey Street, Hoosick Falls, NY, 12090 (the "Facility") began operation in or about 1955. At the time, Dodge Fiber owned and operated the Facility.

---

[3] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016)

35.     The property was sold to Oak Industries in 1967, which later sold the site to Allied-Signal in 1986. Allied-Signal sold the facility to Furon Company (Furon) in 1997, and Defendant Saint-Gobain purchased the facility in or around 1999.

36.     Defendant Saint-Gobain is the current owner and operator of the Facility.

37.     Upon information and belief, the manufacture of stain and water resistant fabric has taken place at the Facility since 1967 throughout the successive owners.

38.     Upon information and belief, Defendant Sain-Gobain continued to manufacture water and stain resistance fabric at the Facility from its purchase in 1999 until approximately 2004.

39.     Upon information and belief, PFOA was used in the process of manufacturing water and stain resistance fabric at the Facility.

40.     Saint-Gobain, Furon and Allied-Signal utilized trays for the application of the PFOA Solution to the fabric. Employees added the solution to the trays during production runs and recovered most of the solution at the end of the run each shift.

41.     Defendants' employees, however, at the direction of corporate officers, washed out and discharged the remaining PFOA Solution from the trays into drains on a daily basis during each shift.  Upon information and belief, those floor drains resulted in the discharge of PFOA into the soil and, in turn, into the aquifer relied upon by Plaintiffs.

42.     Upon information and belief, Defendants discharged and released PFOA into an underground aquifer, which is the only source of drinking water for the residents of Hoosick Falls.

43.     Upon information and belief, Saint-Gobain ran, on average, three shifts a day, five days a week at the Facility.

44.     Upon information and belief, throughout the Oak Industries, Allied-Signal and Furon ownership of the McCaffrey facility, each company also used PFOA in a solid form as a part of a separate manufacturing process.

45.     Allied-Signal also made pressure-sensitive tapes, Teflon-coated fabrics, and Teflon sheet, tape and laminates while it owned the McCaffrey plant.

46.     Defendant Saint-Gobain also utilized PFOA in other processes at the McCaffrey facility between, upon information and belief, 1999 and approximately 2004.

47.     Upon information and belief, PFOA seeped into the village's underground wells and aquifers when workers at the McCaffrey Street Plant, over a period of decades, cleaned smokestack filters and other equipment on the side of the hill outside the plant and flushed manufacturing byproducts into a storm drain.

48.     Upon information and belief, Defendants discharged PFOA into the environment in other ways.

### Discovery of PFOA Contamination in Hoosick Falls

49.     The Village of Hoosick Falls operates and maintains a municipal water system for approximately 4,500 residents, with 1,300 service connections (as of 2014). The Village estimates that it provides water to approximately 95% of the Village's residents.[4]

50.     This water system is served by three drilled wells and has an average daily demand of approximately 403,831 gallons (as of 2014).[5]

51.     The Village has conducted numerous tests of the water since 2014.

52.     The raw water in the three municipal wells has tested at ranges between 150 ng/L (ppt) to 662 ng/L (ppt).

53.     Private wells tested as high as 412 ng/L (ppt).

54.     The five (5) groundwater test wells near the Facility have tested as high as 18,000 ng/L.

55.     The EPA Lifetime Health Advisory recommends PFOA levels not exceed 70 ppt.[6]

---

[4] Village of Hoosick Falls, *Annual Drinking Water Quality Report for 2014*
[5] *Id.*

56.     In August 2015, Defendant Saint-Gobain began its groundwater and soil sampling program at the McCaffrey Facility.

57.     In November 2015, Defendant Saint-Gobain attended the monthly Village of Hoosick Falls board meeting to present the results of its sampling program to the public and notified the Board of its intention to fund granular activated carbon ("GAC") treatment at the water treatment plant. Saint-Gobain also agreed to establish and fund a free bottled water program for residents.

58.     In a letter dated November 25, 2015, EPA Region 2 Administrator Judith Enck stated: "Based on the presence of PFOA above 400 ppt in Hoosick Falls public drinking water supply wells, it is recommended that an alternate drinking water source (e.g., bottled water) be provided to the users of the Hoosick Falls public water supply, until such time as PFOA concentrations in drinking water are brought consistently below the 400 ppt level."

59.     Residents were advised not to drink, cook, or use the water for basic necessities as a result of the PFOA contamination caused by Defendants.

60.     In Hoosick Falls, until the bottled water program was put in place, most residents, including the above-named Plaintiffs were getting their water from the municipal water supply, which has its intake wells at a distance of about 500 yards from the Facility owned and operated by Defendants.

61.     Upon information and belief, no medical studies or surveys have been done in Hoosick Falls regarding the PFOA contamination.

_____

[6] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 101 (May 25, 2016)

62.     On December 17, 2015, the EPA issued an <u>EPA Statement on Hoosick Falls Water</u> <u>Contamination</u> wherein "[the EPA] recommends that people **NOT** drink the water from the Hoosick Falls public water supply or use it for cooking" (emphasis in original).[7]

63.     Shortly thereafter Saint-Gobain entered into an agreement with the Village whereby they agreed to provide free bottled water to the residents of the Village and to pay for the installation of a granulated active carbon ("GAC") filter system to provide treatment for PFOA at the municipal water treatment plant.

64.     On January 14, 2016, the New York Department of Environmental Conservation ("DEC") and DOH requested the EPA to add Saint-Gobain and other possible sources of contamination in Hoosick Falls to the National Priorities List ("NPL") under the federal Superfund program and to investigate the sources of contamination.

65.     In a public meeting held on the same day, EPA officials admitted that designating Hoosick Falls as a Superfund site would hurt property values in the village.

66.     On January 27, Governor Andrew Cuomo announced he had issued an emergency regulation to identify PFOA as a hazardous substance and the Facility as a state Superfund site. The Governor committed to allocating significant State of New York resources to investigate the source of PFOA, to conduct a Health Risk Analysis to establish a PFOA drinking water guidance level, to retest private wells, and to immediately install filtration systems at schools and other community gathering places.

67.     On February 11, 2016, the DEC served a letter on Defendants Saint-Gobain and Honeywell International, which identified the Defendants as parties responsible for the PFOA contamination in the Village of Hoosick Falls water system now injuring Plaintiffs.

---

[7] *EPA Statement on Hoosick Falls Water Contamination*, (December 17, 2015)

68.     The DEC's investigation identified groundwater contamination at the Facility where Defendant Saint-Gobain and Defendant Honeywell International used PFOA for decades. Further, the DEC issued an emergency regulation identifying PFOA as a hazardous substance and the Facility as a state Superfund site.

69.     The DEC demanded that Defendants enter into a Consent Order to "investigate the extent of the contamination, provide for interim remedial measures to protect public health and drinking water supplies, analyze the alternatives for providing clean and safe drinking water, and ultimately design and implement a comprehensive clean and remediation of contamination at or near the Properties."  The DEC also demanded "reimbursement of funds expended . . . in taking response actions at sites where hazardous substances have been released."[8]

70.     According to DEC, "Both Saint-Gobain Performance Plastics Corporation (Saint-Gobain) and Honeywell International, Inc. (Honeywell), or their predecessors, have been identified as the owner, past owner, possible arranger, generator, transporter, supplier, operator, past operator, and/or successor thereto with respect to various industrial facilities at the Properties."[9]

71.     On February 16, 2016, DEC placed the Facility on The Inactive Hazardous Waste Disposal Site Program (the State Superfund Program) as a 2 site that "presents a significant threat to the public health and or/environment."[10]

72.     At this time, it is not known how long Plaintiffs had been drinking municipal water contaminated with PFOA, nor what the PFOA levels were prior to the first drinking water testing that was performed.

---

[8] February 11, 2016 letter of Thomas Berkman, Deputy Commissioner and General Counsel, New York State Department of Environmental Conservation Re: Demand related to Hoosick Falls Perfluorooctanoic Acid (PFOA) Contamination.
[9] Id.
[10] Public Notice, State Superfund Program, *Inactive Hazardous Waste Disposal Site Classification Notice* (February 16, 2016).

73.     Upon information and belief, Defendants ownership and operation at these properties have resulted in releases of PFOA into the surrounding environment, as samples in the Village Water Supply, which is proximate to and downgradient of the Facility, show elevated levels of PFOA.

74.     As a proximate result of the manner in which defendants disposed of PFOA and discharged it into the environment, PFOA contaminated the Village of Hoosick Falls' groundwater and water supply system.

75.     The water contamination in Hoosick Falls has made properties in the area less marketable and resulted in significant property devaluation, prompting the New York Department of Financial Services to meet with concerned property owners.

76.     The water contamination in Hoosick Falls has also caused several banks to cut back and/or cease mortgage and refinancing activities in and around Hoosick Falls for fear of further property devaluation and/or the lack of access to potable water.

77.     Defendants' discharge and release of PFOA into underground aquifers has caused Plaintiffs personal injuries and property damages.

78.     The February 11, 2016 DEC letter to Saint-Gobain and Honeywell (Allied-Signal) identified the two companies as potentially responsible parties for PFOA contamination in the Village, including the McCaffrey Street Site.[11]

79.     As a result, Defendants Saint-Gobain and Honeywell have entered into two enforceable Consent Orders to:

    i.      Investigate the source and determine the full scope and extent of contamination at four Honeywell and two St. Gobain plants;

_____

[11] February 11, 2016 letter of Thomas Berkman, Deputy Commissioner and General Counsel, New York State Department of Environmental Conservation *Re: Demand related to Hoosick Falls Perfluorooctanoic Acid (PFOA) Contamination.*

12

ii.   Investigate feasibility of an alternate water supply which may include a new well field, a surface water supply source, or an interconnection with an existing municipal water supply system, among others;

iii.   Fund the installation and maintenance of temporary and full capacity filtration systems for the Village municipal water supply;

iv.   Reimburse State for costs incurred for response and investigation into the contamination, and well sampling; and

v.   Continue to pay for bottled water for Village and Town residents until successful installation of the full capacity filtration system.[12]

80.   Further, New York's own Senator, Charles Schumer, has been pushing to have the EPA fast-track efforts to have the Facility designated a Federal Superfund Site, listed on the National Priority List ("NPL").[13]

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION: NEGLIGENCE

91.   Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

92.   This cause of action is brought pursuant to New York law.

93.   Defendants knew or should have known that exposure to PFOA was hazardous to the environment and to human health.

94.   Defendants knew or should have known that the manner in which they were handling and/or disposing PFOA would result in the contamination of the water supply in the Village of Hoosick Falls.

---

[12] June 3, 2016 Press Release from the New York Department of Environmental Conservation, *New York State Department of Environmental Conservation Secures Agreement That Holds Saint Gobain & Honeywell Responsible for PFOA Contamination in Hoosick Falls Area*

[13] See May 12, 2016 Press Release of Senator Charles Schumer, *SCHUMER URGES EPA TO IMMEDIATELY RELEASE UPDATED DRINKING WATER GUIDELINES FOR PFOA & PFOS-RELATED CONTAMINATION; SENATOR SAYS RECENT DISCOVERIES OF DANGEROUS CHEMICALS IN UPSTATE NY WATER SUPPLIES – LIKE HOOSICK FALLS – SHOW THAT COMMUNITIES MUST BE ARMED WITH MOST UP-TO-DATE STANDARDS TO ENSURE HEALTH & ENVIRONMENT ARE NOT COMPROMISED*

95.     Defendants knew or should have known that safety precautions would be required to prevent the release of PFOA into the surrounding environment.

96.     Defendants knew or should have known that it was unsafe and/or unreasonably dangerous to dispose of the PFOA contaminated material in the ways in which they did.

97.     Defendants, as owners and operators of the Facility that utilized PFOA, owed Plaintiffs a cognizable duty to exercise reasonable care to ensure that contaminated substances at the Facility were disposed of reasonably and properly so as not to discharge hazardous or toxic substances, including PFOA, into the environment.

98.     Defendants owed Plaintiffs a duty to ensure that the manufacturing processes they employed would not unreasonably jeopardize the drinking water supply (both the municipal and private wells) relied upon by the Hoosick Falls community.

99.     Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to act reasonably to remediate, contain, and eliminate the contamination before it injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs and their property.

100.    Defendants breached their duty by allowing PFOA to be released into the drinking water (both the municipal and private wells) of the Village of Hoosick Falls when they unreasonably disposed of PFOA contaminated material in such a manner that ensured the PFOA would enter into the environment and groundwater.

101.    As such, the Defendants, negligently, gross negligently, recklessly, willfully, wantonly, and/or intentionally created the contamination of drinking water in and around the Plaintiffs' residence.

102.    Defendants further breached the duties owed to the Plaintiffs by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

14

103.   Defendants' failure to notify the Plaintiffs in a timely manner of the contamination of the Village of Hoosick Falls' drinking water, and, consequently, the presence of PFOA in the real property of Plaintiffs constitutes another breach of the duties that Defendants owed the Plaintiffs.

104.   Defendants' breaches of their duties were direct and proximate causes of Plaintiffs' damages and the imminent, substantial, and impending harm to their home and health.

105.   Defendants' breaches of their duties caused the drinking water in both the municipal and private wells to become contaminated with unsafe and dangerous levels of PFOA.

106.   Further, due to Defendants' breach of their duty to timely notify the community and act reasonably in handling and/or disposing of PFOA contaminated material, Plaintiffs were forestalled from undertaking effective and immediate remedial measures, and Plaintiffs have expended and/or will be forced to expend significant resources to test, monitor, and remediate the effects of Defendants' negligence for many years into the future.

107.   Plaintiffs suffered foreseeable injuries and damages as a proximate result of said Defendants' negligent breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle them to be protected against such actions or inactions.

108.   Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including but not limited to the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical

monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the negligence which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

**AS AND FOR A SECOND CAUSE OF ACTION:**
**<u>TRESPASS</u>**

109.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

110.    This cause of action is brought pursuant to the laws of New York.

111.    Plaintiffs, as described above, are owners of real property with the right of possession.

112.    At all times relevant to the present cause of action, Defendants had exclusive control over the Facility which, through acts and/or omissions by Defendants in the handling and/or disposal of material contaminated with PFOA and other chemicals, resulted in the contamination of the water supply relied upon by Plaintiffs at all relevant times.

113.    At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants had good reason to know or expect that large quantities of PFOA would and/or could be introduced into the persons and property of Plaintiffs.

114.    The above-described affirmative, voluntary, and intentional acts were performed with the willful intent to cause PFOA to be disbursed through the water and onto the land and property of Plaintiffs.

115.    Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused an unknown quantity of PFOA to be released into the drinking water for the Village of Hoosick Falls.

116.    Defendants' willful, wanton, and intentional failure to act and/or their affirmative choices of actions and following courses of actions have caused PFOA to enter and trespass upon the land and realty of the Plaintiffs and cause an injury to their possession and/or right of possession.

117.    Plaintiffs have not consented and do not consent to the trespass and contamination alleged herein.  Defendants knew or reasonably should have known that the Plaintiffs did not and do not consent to this trespass.

118.    These voluntary actions resulted in the immediate and continued trespass, injury and damage to Plaintiffs, their property and their right of possession of their property.

119.    Further, Defendants' actions in introducing unknown quantities of PFOA into the drinking water of the Village of Hoosick Falls and, consequently, the persons and property of Plaintiffs were done with actual malice, and in wanton, willful and/or reckless disregard for Plaintiffs' rights, health, and property.

120.    Additionally and/or alternatively, Defendants' decisions to delay and the resulting delay in taking any affirmative action to eliminate, correct, and/or remedy the PFOA release and contamination after having knowledge and notice of said contamination were done with actual malice, and in wanton, willful and/or reckless disregard for the rights, health, and property of Plaintiffs.

121.    Accordingly, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs to their original position, including but not limited to the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons which includes but is not limited to the need for medical monitoring and direct,

consequential, and nominal damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

**AS AND FOR A THIRD CAUSE OF ACTION:**
**ABNORMALLY DANGEROUS ACTIVITY**
**AND ABSOLUTE AND STRICT LIABILITY**

122.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

123.    In the alternative for the First Cause of Action, set forth above, Plaintiffs bring this claim pursuant to New York law.

124.    Defendants' manufacturing, operational, and disposal practices as it related to material contaminated with PFOA and/or other ultra-hazardous toxins was negligent, reckless, and/or intentional and constituted an ultra-hazardous or abnormally dangerous activity for which Defendants are strictly liable.

125.    The Defendants manufacture, use, mishandling, and disposal of material that contained PFOA was inappropriate, given PFOA's toxicity and danger to human health, at the Facility due to the Facility's proximity to the sources of drinking water (both municipal and private wells).

126.    As a result, Defendants allowed or caused these ultra-hazardous and abnormally dangerous substances to leach into the land and ground water surrounding the Facility, including the potable water supply relied upon by Plaintiffs.

127.    Further, Defendants' contamination of the potable water supply with PFOA creates the likelihood for personal injury and property damage to individuals who use and rely upon the water.

128.    Defendants manufacture, use, mishandling, and disposal of PFOA and their reckless disregard for the consequences of their actions caused the existence of a high degree of

harm to both the Plaintiffs and their property. Given the nature of PFOA, the likelihood of this harm was great. This is only underscored by the Facility being declared a State Superfund Site on January 27, 2016[14] and the continued efforts of Sen. Charles Schumer to have the EPA fast-track efforts to have the Facility designated a Federal Superfund Site, listed on the National Priority List ("NPL").[15]

129.    The risk of such activities outweighs any value associated with the same.  As the result of the said ultra-hazardous or abnormally dangerous activities, Plaintiffs have suffered damages and imminent, substantial, and impeding harm to their health, their families, to the value of their home and property, and Plaintiffs have expended or will be forced to expend significant resources to safeguard their health and their property, obtain monitoring, testing, remediating services or equipment, as well as health monitoring indefinitely for years and decades into the future.

130.    By reason of the foregoing, Defendants are strictly liable in tort for personal injury and property damage sustained by Plaintiffs.

131.    Accordingly, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs to their original position, including, but not limited to the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, including medical monitoring, and direct, consequential, and nominal damages

---

[14] See January 27, 2016 Press Release of Governer Cuomo, *Governer Cuomo Announces Immediate State Action Plan to Address Contamination in Hoosick Falls*
[15] See May 12, 2016 Press Release of Senator Charles Schumer, *SCHUMER URGES EPA TO IMMEDIATELY RELEASE UPDATED DRINKING WATER GUIDELINES FOR PFOA & PFOS-RELATED CONTAMINATION; SENATOR SAYS RECENT DISCOVERIES OF DANGEROUS CHEMICALS IN UPSTATE NY WATER SUPPLIES – LIKE HOOSICK FALLS – SHOW THAT COMMUNITIES MUST BE ARMED WITH MOST UP-TO-DATE STANDARDS TO ENSURE HEALTH & ENVIRONMENT ARE NOT COMPROMISED*

flowing from the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION:

## <u>PRIVATE NUISANCE</u>

132.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

133.    This cause of action is brought pursuant to New York law.

134.    Defendants' reckless, intentional and unreasonable, abnormally dangerous, and/or negligent acts and omissions, as alleged above, resulted in the discharge of PFOA into the environment, contaminating the municipal and private wells from which the Plaintiffs obtained their drinking water.

135.    The discharge of PFOA into the environment resulted in the contamination of the village's groundwater and water supply with hazardous levels of PFOA.

136.    The contamination of the groundwater and water supply has prevented and continues to prevent Plaintiffs from consuming or using the water at their property or residence and constitutes a substantial interference with the right of Plaintiffs and their property.

137.    The inability to use potable drinking water at their residences has caused the Plaintiffs significant inconvenience and expense.

138.    By reason of the foregoing, Defendants are liable to Plaintiffs for the damages that they have suffered as a result of Defendants' actions, the amount of which will be determined at trial, plus reasonable attorneys' fees and costs.

139.    Accordingly, Plaintiffs seek general damages from Defendants, in an amount to be determined at trial, directly resulting from the their injuries in a sufficient amount to compensate them for the injuries and losses and to restore Plaintiffs to their original position, including, but not

limited to the difference between the current value of their property and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injury to persons, including the need for medical monitoring, and direct, consequential, and nominal damages flowing from the nuisance and trespass which are the natural and proximate result of Defendants' conduct in an amount to be proved at trial.

## DECLARATORY AND INJUNCTIVE RELIEF

140.    Since Defendants have acted or refused to act on grounds generally applicable to Plaintiffs, final injunctive and declaratory relief is appropriate.

## PUNITIVE DAMAGES

141.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

142.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing property damage, nuisances, and trespasses upon the persons and properties of Plaintiffs, disregarding their protected rights.

143.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFOA-containing waste would be effectively disposed of and not discharged into the surrounding environment.

144.    Defendants have caused great harm to the property and water supplies of Plaintiffs and demonstrated an outrageous conscious disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

A.      a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs.

B.      an order requiring that Defendants implement a testing and monitoring protocol to test Plaintiffs' property and its drinking water, and to implement appropriate remedial measures.

C.      an order establishing a medical monitoring protocol for Plaintiffs.

D.      an award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;

E.      an order for an award of attorney fees and costs, as provided by law;

F.      an award of pre-judgment and post-judgment interest as provided by law, and

G.      an order for all such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury of any and all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

                                      Respectfully submitted,

July 27, 2016                    **NAPOLI SHKOLNIK PLLC**

                                 By:   /s/ Hunter Shkolnik
                                 Hunter Shkolnik (NDNY #512533)
                                 Paul J. Napoli, *PHV*
                                 Patrick J. Lanciotti, *Pending Admission*
                                 360 Lexington Ave., Eleventh Floor
                                 New York, NY, 10017
                                 (212) 397-1000
                                 hunter@napolilaw.com
                                 pnapoli@napolilaw.com
                                 planciotti@napolilaw.com

                                 *Attorneys for Plaintiffs*